UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| RENEE MCDONALD, *on behalf of herself and all others similarly situated,* | CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL |
| *Plaintiffs,* | |
| v. | Case No. _____ |
| PAPERLESSPAY CORPORATION, FAREWAY STORES, INC, MARK BROUGHTON, AND REYNOLDS CRAMER, | |
| *Defendants.* | |

Named Plaintiff Renee McDonald individually and on behalf of other persons similarly situated (collectively "Plaintiffs" or the "Class" or "Class Members"), by and through their attorneys, Thomas & Solomon LLP, bring this class action complaint against PaperlessPay Corporation ("PaperlessPay"); Fareway Stores, Inc. ("Fareway"); Mark Broughton, and Reynolds Cramer (collectively "Defendants"), and allege as follows:

## <u>INTRODUCTION</u>

1.     Defendant PaperlessPay Corporation provides third-party payroll and human resources to clients throughout the United States.

2.     PaperlessPay's clients, are companies ("Employers") that provide PaperlessPay with sensitive employee information to allow PaperlessPay to provide payroll and W-2 services to Employer's employees.

1

3.     Employers such as Defendant Fareway utilize PaperlessPay to provide payroll and W-2 services to employees of Fareway.

4.     Named Plaintiff McDonald and Class Members are current and former employees of the Employers who use PaperlessPay for their payroll services and have provided PaperlessPay with sensitive personally identifiable information ("PII") such as the names, address, pay and withholdings information, bank account number information, and Social Security numbers of Class Members.

5.     On or around February 18, 2020, unauthorized hackers illegally obtained the PII of Plaintiffs and Class Members as a result of a data breach ("Data Breach" or "Breach") on PaperlessPay's servers and systems.

6.     Not only did the hackers take Plaintiffs and Class Members' PII, but law enforcement found that Class Members' PII is for sale on the dark web. In other words, this listing confirms that the PII of Plaintiffs and Class Members was breached and stolen from PaperlessPay's servers.

7.     Because of the Data Breach, Plaintiffs' and Class Members' PII was (and may still be) available for sale on the dark web for criminals to access and abuse, thereby exposing Plaintiffs and Class Members to a lifetime risk of identity theft.

8.     Despite knowing that its servers and systems were breached and that PII was being offered for sale on the dark web, Defendant PaperlessPay has made the deliberate decision to not inform affected individuals of the Data Breach that their PII was potentially sold on the dark web to criminals.

9.     Defendants therefore breached their duty to properly safeguard and protect Plaintiffs' PII and by disclosing their PII to cybercriminals.

10.     This lawsuit seeks to redress Defendants' unlawful disclosure of the PII of all persons affected by this Data Breach.

11.     Accordingly, Named Plaintiff McDonald brings this action as a direct and/or proximate result of the Data Breach. Plaintiffs have incurred and will continue to incur damages in the form of, *inter alia*, attempted identity theft, time and expenses mitigating harms, increased risk of harm, diminished value of PII, loss of privacy, and/or additional damages set forth below.

## JURISDICTION AND VENUE

12.     The jurisdiction of this Court is invoked pursuant to Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d)(2), because there are at least 100 class members, the amount in controversy exceeds five million, and there is minimal diversity of citizenship.

13.     This Court has personal jurisdiction over PaperlessPay Corporation because PaperlessPay Corporation maintains its headquarters in Florida and has sufficient minimum contacts with Florida.

14.     This Court has personal jurisdiction over Defendant Fareway Stores, Inc. because Fareway Stores, Inc. conducts business and has sufficient minimum contacts with Florida by outsourcing its payroll processing services to PaperlessPay, a company which it knows is headquartered in Jacksonville, Florida.

15.    The Data Breach also occurred on PaperlessPay's server, which is physically located in Jacksonville, Florida.

16.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events giving rise to this action occurred in this District. Defendant PaperlessPay Corporation is based in this District and maintained Class Members' PII in this District.

## THE PARTIES

### *Named Plaintiff*

17.    Named Plaintiff Renee McDonald is a citizen of Iowa and former employee of Fareway Stores, Inc.

18.    In April 2020, Plaintiff McDonald received a notice that her PII had been compromised in the Data Breach.

19.    Plaintiff McDonald subsequently spent time taking action to mitigate the impact of the Data Breach, including researching the Data Breach, reviewing options for subscribing to identity theft services, reviewing financial accounts for fraud or suspicious activity, and researching how to protect herself from the consequences of the Data Breach.

20.    As a result of the Data Breach, Plaintiff McDonald continues to spend time each month reviewing her financial information for irregularities.

21.    As a result of the Data Breach, Plaintiff McDonald has suffered emotional distress as a result of the release of her PII, which she expected Defendants to protect

from disclosure, including anxiety, concern, and unease about unauthorized parties viewing and potentially using her personal and financial information. As a result of the Data Breach, Plaintiff McDonald anticipates spending considerable time to contain the impact of the Data Breach.

*Defendants*

22.    Defendant PaperlessPay Corporation is a Florida corporation with its principal place of business located at 800 Water St, Jacksonville, Florida 32204.

23.    According to its website, PaperlessPay provides payroll services to approximately 1,500 employers and has over two million employee users.

24.    According to its website and white paper on its security systems, PaperlessPay's servers are located in Jacksonville, Florida.

25.    Fareway Stores, Inc. is a retail grocery chain operating at more than 100 locations in the Midwest.

26.    Defendant Fareway Stores, Inc. is an Iowa corporation with its principal place of business in located at 715 8th Street, P.O. Box 70, Boone, Iowa 50036.

27.    Defendant Fareway Stores, Inc. uses Defendant PaperlessPay Corporation to for payroll processing for Fareway's employees.

28.    On or about April 16, 2020, Fareway notified its affected employees whose PII was compromised as a result of the Data Breach.

29.    Defendant Mark Broughton is the Chief Executive Officer ("CEO") of PaperlessPay Corporation.

30.    As CEO, Mr. Broughton is responsible for ensuring that PaperlessPay Corporation implemented appropriate security measures to protect the PII of Plaintiffs.

31.    Defendant Reynolds Cramer is the President and CEO of Defendant Fareway Stores, Inc.

32.    As President and CEO, Mr. Cramer is responsible for ensuring that Fareway, and any third-party entities it entrusted with its employees' PII, implemented appropriate security measures to protect the PII of Plaintifffs.

## FACTS

### The Data Breach

33.    On or about February 18, 2020, an unauthorized third party accessed Defendant PaperlessPay Corporation's servers and systems resulting in the Data Breach and exposure of the PII of at least tens of thousands of persons.

34.    Despite being retained to securely maintain the PII of the Employers, PaperlessPay was unaware of this Data Breach until it was contacted by the Department of Homeland Security that its servers and systems had been breached.

35.    PaperlessPay subsequently began working with the Department of Homeland Security, the Federal Bureau of Investigation, and a private forensic security firm to investigate the Data Breach.

36.    Through these investigations, PaperlessPay confirmed that the unauthorized person gained access to their SQL server, where their data is stored.

37.     Most troubling, despite knowing of the Data Breach, PaperlessPay has repeatedly tried to conceal and/or downplay the Data Breach.

38.     For example, once contacted by the Department of Homeland Security and Federal Bureau of Investigation, PaperlessPay shut down its servers, causing a service disruption to the Employers. However, when contacted by at least one Employer about the service disruption, PaperlessPay responded that they had a security issue, but did not provide further details to the Employer regarding the nature of the incident, nor did PaperlessPay indicate that there was a Data Breach at that time.

39.     PaperlessPay only notified Employers of the Data Breach on approximately March 20, 2020, over a month after the breach was first discovered.

40.     While PaperlessPay ultimately notified Employers of the Data Breach, PaperlessPay made the deliberate decision not to notify individuals whose data was impacted by the Data Breach.

41.     In fact, when asked by one of the affected Employers, Riverwood Healthcare Center, if PaperlessPay intended to notify the affected individuals, PaperlessPay told the Employer that it had not and did not intend to do so. In a letter notifying its employees of the Data Breach, Riverwood Healthcare Center stated that it was "not comfortable" with the decision made by PaperlessPay not to inform individuals of the data breach.

42.    The stolen PII has great value to hackers due to the sheer number of individuals affected and the fact that bank account information and Social Security numbers were compromised.

43.    For example, PaperlessPay currently states on its website that it has 2,272,690 users (who are the employees of the affected Employers), thus making it possible that millions of individuals had their PII stolen.

44.    Additionally, although Defendant Fareway Stores, Inc. is just one of PaperlessPay's customers, Fareway has notified 30,519 individuals in the state of Iowa alone that their PII was compromised.

45.    Based on disclosures made by Employers to certain states, only a handful of Employers have notified their employees that their PII was compromised in the Data Breach. These Employers include: Fareway Stores, Inc.; Marshall Medical Center (El Dorado, California); Community Memorial Health System (Claysburg, Pennsylvania); Orlando Utilities Commission (Orlando, Florida); City of Fort Lauderdale; Lee Auto Malls (Auburn, Maine);    Spencer Municipal Hospital (Spencer, Iowa); MP Environmental Services, Inc. (Bakersfield, California); Riverwood Healthcare Center (Minneapolis, Minnesota); and PCL Construction, Inc. (Denver, Colorado).

46.    Given the fact that PaperlessPay states it has 1,500 clients, it is likely that hundreds of employers have not yet notified at least tens of thousands of employees that their PII was compromised.

47. PaperlessPay may also not be immediately recognizable to Class Members because it is a third-party entity that contracts with the Employers to provide payroll services.

48. As a result, PaperlessPay's decision not to inform individuals of the data breach is particularly troubling given this dynamic.

***Personally Identifiable Information (PII)***

49. PII is of great value to hackers and cyber criminals, and the data compromised in the Data Breach can be used in a variety of unlawful manners.

50. The term "personally identifiable information" refers to information which can be used to distinguish or trace an individual's identity, such as their name, social security number, biometric records, etc. along, or when combined with other personal or identifying information which is linked or linkable to a specific individual, such as date and place of birth, mother's maiden name, etc." *See* Office of Mgmt & Budget, OMB Memorandum M-07-16 n.1, *available at* https://www.whitehouse.gov/sites/whitehouse.gov/files/omb/memoranda/2007/m07-16.pdf.

51. The PII of individuals is of high value to criminals, as evidenced by the prices they will pay through the dark web. For example, personal information can be sold at price ranging from $40 to $200, and bank details have a price range of $50 to $200. *See Your personal data is for sale on the dark web. Here's how much it costs*. Digital Trends, Oct. 16, 2019, available at:

https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last accessed May 19, 2020).

52.    There is a strong likelihood that Plaintiffs and Class Members are already or will become victims of identity theft and fraud, given the breadth of PII about them that has been released, disclosed, and published.

53.    The likelihood of such identity theft and fraud is significantly increased by the fact that Plaintiffs and Class members' PII has already been publicly offered for sale to identity thieves on the dark web.

54.    The possibility that Plaintiff's and Class Members' Social Security numbers can be purchased on the dark web as a result of the Data Breach is particularly significant.

55.    Neal O'Farrell, a security and identity theft expert for Credit Sesame, calls a Social Security number "your secret sauce," that is "as good as your DNA to hackers." *See* Cameron Huddleston, *How to Protect Your Kids From the Anthem Data Breach*, Kiplinger, (Feb. 10, 2015), http://www.kiplinger.com/article/credit/T048-C011-S001-how-to-protect-your-kids-from-the-anthem-databrea.html (last visited May 17, 2020).

56.    Unfortunately, Plaintiffs and Class members have to wait until they become victims of Social Security number misuse before they can obtain a new one. Even then, the Social Security Administration warns "that a new number probably won't solve all [] problems . . . and won't guarantee . . . a fresh start." In fact, "[f]or some victims of identity theft, a new number actually creates new problems." *See* Social

Security Admin., *Identity Theft and Your Social Security Number*, at 6-7, https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited May 17, 2020).

57.     One of those new problems is that a new Social Security number will have a completely blank credit history, making it difficult to get credit for years unless it is linked to the old compromised number.

58.     Given the nature of this Breach, it is foreseeable that cybercriminals can and will use the compromised PII in a variety of different ways.

**Defendants Failed to Adequately Protect Plaintiffs' and Class Members' PII**

59.     Fareway, as an employer, required Plaintiffs and the Class Members to surrender their PII including their names, addresses, social security numbers, and pay information, and was entrusted with properly holding, safeguarding, and protecting against unlawful disclosure of PII.

60.     In light of the special relationship between Defendant Fareway and Plaintiffs and Class Members, whereby Defendants became guardians of Plaintiff's and Class Members' PII, Defendant Fareway became a fiduciary to Plaintiffs and Class Members.

61.     As the agent of Defendant Fareway for purposes of storing, maintaining, and safeguarding Plaintiff's and Class Members' PII, Defendant Fareway's fiduciary duty is imputed to Defendant PaperlessPay.

62.    The Data Breach was a direct result of Defendants' failure to implement adequate and reasonable cyber-security procedures and protocols necessary to protect Plaintiffs' PII.

63.    Defendants maintained the PII in a reckless manner. In particular, the PII was maintained on PaperlessPay's servers in a condition vulnerable to cyberattacks.

64.    Defendants knew, or reasonably should have known, of the importance of safeguarding PII and of the foreseeable consequences that would occur if Plaintiffs' PII was stolen, including the significant costs that would be placed on Plaintiffs as a result of a breach.

65.    The mechanism of the cyberattack and potential for improper disclosure of Plaintiffs' and Class Members' PII was a known risk to Defendants, and thus Defendants were on notice that failing to take steps necessary to secure the PII from those risks left that information in a dangerous condition.

66.    Defendants disregarded the rights of Plaintiffs and Class Members by, *inter alia*, intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure its data systems were protected against unauthorized intrusions; failing to disclose that it did not have adequately robust computer systems and security practices to safeguard Class Member PII; failing to take standard and reasonably available steps to prevent the Data Breach; concealing the existence and extent of the Data Breach, and failing to provide Plaintiffs and Class Members prompt and accurate notice of the Data Breach.

***Defendants' Response to the Data Breach is Inadequate to Protect the Plaintiffs and Class Members***

67.    Plaintiffs are unaware of any actions that Defendant PaperlessPay has taken to directly notify Plaintiffs affected by the Data Breach that their PII was compromised.

68.    To the extent that Plaintiffs have been notified of the Data Breach, it has only been via their respective Employers, not Paperless Pay.

69.    Defendant Fareway Stores, Inc. notified its affected employees on approximately April 16, 2020 that their PII was stolen as a result of the Data Breach.

70.    In that notification, Fareway offered only one year of identity monitoring services through TransUnion to affected individuals that were employed by Fareway.

71.    The identity monitoring services offered by Fareway is inadequate to protect Fareway's employees from the threats they face. It does nothing to protect against identity theft. Instead, it only provides various measures to detect identity theft once it has already been committed.

72.    The TransUnion service offered by Fareway also falls far short when compared to other much more comprehensive and continual services offered by other identity monitoring services.

73.    The offered service does not provide real time monitoring of individuals' credit cards, bank accounts, checking accounts, savings accounts, and 401(k) investment account activities. Such services are offered by other identity monitoring services.

74. Additionally, although TransUnion's policy offers up to $1 million of identity theft insurance, the coverage afforded is limited and often duplicative of (or inferior to) basic protections provided by banks and credit card companies.

75. In fact, BestIDtheftCompanys.com ranks the basic identity protection service offered by TransUnion (which is similar to services offered in Fareway's TransUnion service to Plaintiffs and Class Members) as No. 17 with a score of just 3.8 out of 10. *See* 2020 Best Identity Theft, BEST COMPANY, https://bestcompany.com/identity-theft (last visited May 20, 2020).

76. The PII protection offered by Fareway is also woefully inadequate because it only provides credit monitoring for a period of one year.

77. Further, even if a Class Member signs up for the TransUnion service (or a similar service that may be offered by another Employer), it will not provide that individual with any compensation for the costs and burdens associated with fraudulent activity resulting from the Data Breach that took place prior to a Class Member signing up. This is especially concerning where some Class Members were not informed that their PII was compromised until approximately two months following the Data Breach.

78. Additionally, the TransUnion service cannot guarantee protection against future identity theft. Instead, it only provides notification when Plaintiffs' and Class Members' PII is being used or accessed by unauthorized individuals.

79. Upon information and belief, for the relatively few Employers that have offered identity monitoring services to their employees like the TransUnion plan

offered to Fareway employees, those plans are similarly inadequate for these same reasons described above regarding the TransUnion plan.

***Defendants Were Aware of the Risk of Cyberattacks***

80.     Data security breaches are becoming increasingly more prevalent. In fact, in the wake of the rise in data breaches, the Federal Trade Commission has issued an abundance of guidance for companies. *See e.g.*, *Protecting Personal Information: A Guide for Business*, FTC, *available at* https://www.ftc.gov/tips-advice/business-center/guidance/protecting-personal-information-guide-business.

81.     Further, data breach issues had been at record number in 2019. According to statistics from nortom.com, there was a 54% increase in publicly reported data breaches in the first six months of 2019 versus the first six months of 2018. See *2019 Data Breaches: 4 Billion Records Breached so Far*, Norton, *available at* https://us.norton.com/internetsecurity-emerging-threats-2019-data-breaches.html.

82.     Defendant PaperlessPay in particular was aware of the risk of cyberattacks and hacking by unknown third parties because PaperlessPay provided a white paper on its website discussing the security of its servers and services.

83.     Although PaperlessPay was trusted to maintain the integrity of consumers' PII, that trust was belied by its failure to impose and maintain the necessary safeguards that would have prevented the Data Breach.

84.     Therefore, Defendants clearly knew or should have known of the risks of data breaches and thus should have ensured that the adequate protections were in place.

***Plaintiffs and Class Members Have Suffered Concrete Injuries***

85.     Plaintiffs and Class Members were obligated to provide Defendants with sensitive personal information.

86.     Plaintiffs and Class Members have suffered or will suffer actual injury as a direct result of the Data Breach. These actual injuries include out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach relating to:

- Closely reviewing and monitoring bank accounts and credit reports;

- Purchasing credit monitoring and identity theft prevention;

- Addressing their inability to withdraw funds linked to compromised accounts;

- Placing "freezes" and "alerts" with credit reporting agencies; and

- Contacting financial institutions and closing or modifying financial accounts.

87.     The Plaintiffs and Class Members are at an increased risk that the cybercriminals will use their PII for the rest of their lives.

88.     Plaintiffs bring this action because as a direct and/or proximate result of Defendants' wrongful actions and/or inaction and the resulting Data Breach, Plaintiffs

have incurred and will continue to incur damages in the form of, *inter alia*, attempted identity theft, time and expenses mitigating harms (*e.g.*, the costs of engaging credit monitoring and protection services), increased risk of harm, diminished value of PII, and/or loss of privacy. By this action, Plaintiffs and Class Members seek to hold Defendants responsible for the harm caused by its negligence.

89.    In addition, as a direct and/or proximate result of Defendants' wrongful actions and/or inaction and the resulting Data Breach, Plaintiffs and Class Members have been deprived of the value of their PII, for which there is a well-established national and international market.

90.    Defendants' wrongful actions and/or inaction and the resulting Data Breach have also placed Plaintiffs and Class Members at an imminent, immediate, and continuing increased risk of identity theft and identity fraud.  Moreover, there is a high likelihood that significant identity fraud and/or identity theft has not yet been discovered or reported.

## CLASS ACTION ALLEGATIONS

91.    Pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") Named Plaintiff McDonald bring this action against Defendants as a class action on behalf of themselves and all members of the class of similarly situated persons ("Class"):

> All persons whose PII was compromised as a result of the Data Breach that occurred in approximately February 2020.

92.    Defendants are liable to Class Members under the statutes, laws, and regulations of each state in which Class Members lived and/or worked.

93.    This includes all causes of action that are designed to prevent companies from allowing the improper disclosure of PII, including but is not limited to:

- Cal. Bus. & Prof. Code § 17200 *et seq.*
- Cal. Civil Code §§ 56.06, 1785.11.2, 1797.29, 1798.80, 1798.81.5, 1798.82, 1798.84
- Florida Stat. § 501.201; § 501.171; § 817.5681
- Mass. Gen. Laws ch. 93A § 9, ch. 93H; and
- Minn. Stat. §§ 325E.61, 325E.64.

94.    Plaintiffs reserve the right to amend the above definition(s), or to propose other or additional classes, in subsequent pleadings and/or motions for class certification.

95.    The class action is maintainable under subsections (1), (2), (3) and (4) of Rule 23(a).

96.    Plaintiffs believe that the proposed Class consists of at least tens of thousands of members. Thus, the Class is so numerous that joinder of all members is impracticable.

97.    Common issues of law and fact exist as to all members of the Class and predominate over any questions affecting only individual class members. Among the common issues of law and fact are the following:

- Whether and to what extent Defendants had a duty to protect the Class Members' PII;
- Whether Defendants breached their duty to protect the Class Members' PII;
- Whether the actions and/or inaction of Defendants caused the Class Members' PII to be compromised;
- Whether Defendants disclosed Class Members' PII;

- Whether Defendants conduct was negligent; and
- Whether Defendants are liable for all damages claimed.

98.    The Named Plaintiff's claims are typical of the claims of other members of the Class because, *inter alia*, the Named Plaintiff's and Class Members sustained similar injuries as a result of Defendants' uniform wrongful conduct; Defendants owed the same duty to each Class Member; and Class Members' legal claims arise from the same conduct by Defendants.

99.    Named Plaintiff McDonald and her counsel will fairly and adequately protect the interests of the Class. Named Plaintiff McDonald has no interest antagonistic to the Class, and has retained counsel experienced in class action litigation.

100.    Class counsel Thomas & Solomon LLP is qualified and able to litigate Named Plaintiff and the Class' claims.

101.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy and avoids duplication by allowing these claims to be prosecuted in a single action. Named Plaintiff and members of the Class lack the resources to adequately prosecute separate claims, and the amount that each individual stands to recover makes individual cases impractical to pursue.

102.    The class action is maintainable under subsection (1) of Rule 23(b) because the prosecution of separate actions by individual Class Members would create a risk of establishing incompatible standards of conduct for Defendants.

103.   The class action is also maintainable under subsection (2) of Rule 23(b) because Defendants' acted, or refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or equitable relief with respect to the Class as a whole.

104.   Moreover, the class is maintainable under subsection (3) of Rule 23(b) because the above common questions of law or fact predominate over any questions affecting individual Class Members and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## FIRST CAUSE OF ACTION
### *Negligence*

105.   Plaintiffs hereby re-allege the above paragraphs as if fully restated herein.

106.   As a condition of their employment, Class Members were obligated to provide their Employers and PaperlessPay with their PII.

107.   Defendants had full knowledge of the sensitivity of the PII and the types of harm that Plaintiffs could and would suffer if the PII were compromised.

108.   Defendants had a duty to Plaintiffs to exercise reasonable care in holding, safeguarding, and protecting that information. Plaintiffs were the foreseeable victims of any inadequate safety and security practices. Plaintiffs had no ability to protect their data that was in Defendants' possession.

109.   Defendants owed a duty to Plaintiffs and Class members, arising from the sensitivity of the information, the expectation that information was going to be kept private, and the foreseeability of its data security shortcomings resulting in an

impermissible release, disclosure, and publication to unauthorized parties, to exercise reasonable care in safeguarding their sensitive personal information. This duty included, among other things, designing, implementing, maintaining, monitoring, and testing Defendants' networks, systems, protocols, policies, procedures and practices to ensure that Plaintiffs' and Class members' information was adequately secured from impermissible release, disclosure, and publication.

110. Defendants assumed a duty of care to use reasonable means to secure and safeguard this PII, to prevent its disclosure, to guard it from theft, and to detect any attempted or actual breach of its servers and systems.

111. Defendants had a duty to use ordinary care in activities from which harm might be reasonably anticipated in connection with Plaintiffs' PII data.

112. Defendants breached its duty of care by failing to secure and safeguard the PII of Plaintiffs. Defendants negligently stored and/or maintained its servers and systems.

113. Plaintiffs have suffered harm as a result of Defendants' negligence. These victims' loss of control over the compromised PII subjects each of them to a greatly enhanced risk of identity theft, fraud, and myriad other types of fraud and theft stemming from the use of the compromised information.

114. It was reasonable foreseeable in that Defendants knew or should have known that its failure to exercise adequate care in safeguarding and protecting Plaintiffs' PII would result in its release and disclosure to unauthorized third parties

21

who, in turn, wrongfully used such PII or disseminated it to other fraudsters for their wrongful use and for no lawful purpose.

115.  But for Defendants' negligent and wrongful breach of its responsibilities and duties owed to Plaintiffs, their PII would not have been compromised.

116.  As a direct and proximate result of Defendants' above-described wrongful actions, inactions, and omissions, the resulting Data Breach, and the unauthorized release and disclosure of Plaintiffs' PII, Plaintiffs have incurred (and will continue to incur) the above-referenced economic damages, and other actual injury and harm – for which they are entitled to compensation. Defendants' wrongful actions, inaction, and omissions constituted (and continue to constitute) common law negligence.

117.  Plaintiffs are entitled to injunctive relief as well as actual and punitive damages.

## SECOND CAUSE OF ACTION
### *Breach of Express Contract*

118.  Plaintiffs hereby re-allege the above paragraphs as if fully restated herein.

119.  Plaintiffs had written employment agreements with Defendants. The employment agreements involved a mutual exchange of consideration whereby Defendants entrusted Plaintiffs and Class Members with particular job duties and responsibilities in furtherance of Defendants' services, in exchange for the promise of employment, with salary, benefits, and secure PII.

120.  Defendants' failure to protect Plaintiffs' PII constitutes a material breach of the terms of the agreement by Defendants.

121.   As a direct and proximate result of Defendants' breach of contract with Plaintiffs, Plaintiffs have been irreparably harmed.

122.   Accordingly, Plaintiffs respectfully request this Court award all relevant damages for Defendants' breach of express contract.

### THIRD CAUSE OF ACTION
*Breach of Implied Contract*

123.   Plaintiffs hereby re-allege the above paragraphs as if fully restated herein.

124.   Defendants required Plaintiffs to furnish their PII, which included, *inter alia*, names,  addresses, Social Security numbers, and pay data as a condition precedent of their employment. Defendants required the sensitive information to verify their identities, provide agreed-upon compensation and benefits, and for tax purposes, amongst other things.

125.   Understanding the sensitive nature of the PII, Defendants implicitly promised Plaintiffs that it would take adequate measure to protect their PII.

126.   Plaintiffs reasonably relied upon this covenant and would not have disclosed their PII without assurances that it would be properly safeguarded.

127.   Plaintiffs fulfilled their obligations under the contract by providing their PII to Defendants, and by upholding their obligations.

128.   As the direct and proximate result of Defendants' breach of the contract between Defendants and Plaintiffs, Plaintiffs sustained actual losses and damages as described above.

129.   Accordingly, Plaintiffs respectfully request this Court award all relevant damages for Defendants' breach of implied contract.

## FOURTH CAUSE OF ACTION
### *Unjust Enrichment*

130.   Plaintiffs hereby re-allege the above paragraphs as if fully restated herein.

131.   Defendants, by way of their affirmative actions and omissions, knowingly and deliberately enriched itself by saving the costs it reasonably and contractually should have expended on data security measures to secure Plaintiffs' PII.

132.   Nevertheless, Defendants continued to obtain the benefits conferred on it by Plaintiffs or Plaintiffs' immediate family members employment, mainly from the labor contracted to in the employment agreements between the parties.

133.   As a direct and proximate result of Defendants' decision to profit rather than provide adequate security, and Defendants' resultant disclosures of Plaintiffs' PII, Plaintiffs suffered and continue to suffer considerable injuries in the forms of attempted identity theft, time and expenses mitigating harms, diminished value of PII, loss of privacy, and increased risk of harm.

134.   Accordingly, Plaintiffs respectfully request this Court award relief in the form of restitution and/or compensatory damages.

## FIFTH CAUSE OF ACTION
### *Violation of the Applicable State Laws*

135.   Plaintiffs hereby re-allege the above paragraphs as if fully restated herein.

136.    As a direct and proximate result of Defendants' above-described wrongful actions, inactions, and omissions, resulting in the improper disclosure of Plaintiffs' PII, Defendants are in violation of the following and other similar state laws designed to protect Plaintiffs' from the unauthorized disclosure of their PII:

- Cal. Bus. & Prof. Code § 17200 *et seq.*
- Cal. Civil Code §§ 56.06, 1785.11.2, 1797.29, 1798.80, 1798.81.5, 1798.82, 1798.84
- Florida Stat. § 501.201; § 501.171; § 817.5681
- Mass. Gen. Laws ch. 93A § 9, ch. 93H; and
- Minn. Stat. §§ 325E.61, 325E.64.

137.    Accordingly, Plaintiffs respectfully request the appropriate relief available under each of the state laws.

## SIXTH CAUSE OF ACTION
### *Violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, et seq.*

138.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

139.    The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, *et seq.*, is expressly intended to protect "consumers" like Plaintiffs from deceptive, unfair, and unconscionable acts or practices in the conduct of trade or commerce.

140.    Plaintiffs have a vested interest in the privacy, security, and integrity of their PII; therefore, this interest is a "thing of value" as contemplated by FDUTPA.

141.    Defendants are a "person" within the meaning of FDUTPA and, at all pertinent times, was subject to the requirements and proscriptions of FDUTPA with respect to all of its business and trade practices described herein.

142.    Plaintiffs are "consumers" "likely to be damaged" by Defendants' deceptive and unfair trade practices, which practices are ongoing.

143.    Defendants' unlawful conduct, as described herein, was committed in trade and/or commerce, and was directed to the detriment of Plaintiffs in Florida and throughout the United States.

144.    Consumers, like Plaintiffs, entrusted Defendants with their PII as part of their employment agreements.

145.    Defendants engaged in unfair and deceptive trade practices by representing to consumers, like Plaintiffs, that their PII would not be used without permission and, further, would be maintained in a manner consistent with current, acceptable information security standards and practices.

146.    Defendants violated FDUTPA by failing to properly implement adequate, commercially-reasonable security measures to safeguard and protect the sensitive PII of Plaintiffs also in contravention of Florida's Information Privacy Act, Fla. Stat. § 501.171, which requires covered entities—*i.e.*, companies, such as Defendants, which acquire, maintain, store, or use personal information including individuals' names in combination with their social security numbers—to take reasonable measures to protect and secure data in electronic form containing personal information.

147.    Defendants also engaged in unfair and deceptive trade practices when they either: (1) failed to provide any identity protection services to Plaintiffs following the Data Breach; or (2) provided the Data Breach victims with a woefully inadequate identity protection service that conferred no meaningful relief or remedy.

148.    Plaintiffs have suffered ascertainable injury and losses, as a direct result of Defendants' employment of immoral, unethical, oppressive, unscrupulous, substantially injurious, and unconscionable acts or practices, and unfair or deceptive acts or practices.

149.    Such injuries and losses include, *inter alia*, attempted identity theft, time and expenses mitigating harms, diminished value of PII, loss of privacy, and increased risk of harm.

150.    Under FDUTPA, Plaintiffs are entitled to preliminary and permanent injunctive relief without proof of monetary damage, loss of profits, or intent to deceive.

151.    Plaintiffs seek equitable relief and to enjoin Defendants on terms that the Court considers appropriate.

152.    Defendants' conduct has caused, and continues to cause, substantial injury to Plaintiffs. Unless preliminary and permanent injunctive relief is granted, Plaintiffs will continue to suffer harm. Plaintiffs do not have an adequate remedy at law, and the balance of the equities weighs in favor of Plaintiffs.

153.    At all material times, Defendants' deceptive trade practices were willful within the meaning of FDUTPA and, accordingly, Plaintiffs are entitled to an award of

attorneys' fees, costs, and other recoverable expenses of litigation, including, but not limited to, those under Fed. R. Civ. P. 23(h) and Fla. Stat. § 501.2105.

## PRAYER FOR RELIEF

**WHEREFORE**, Named Plaintiff McDonald and Class Members demand judgment against Defendants in their favor and that they be given the following relief:

a.　appropriate injunctive relief and/or declaratory relief, including an Order requiring Defendants to properly secure and fully encrypt all confidential information, to cease negligently storing, handling, and securing confidential information, and to provide lifetime credit monitoring and identity theft repair services;

b.　an award of appropriate compensatory, statutory, and general damages;

c.　an award of reimbursement, restitution, and disgorgement;

d.　an order certifying the class as requested and designating Thomas & Solomon LLP as class counsel;

e.　designation of Named Plaintiff Renee McDonald as class representative;

f.　an award of reasonable attorneys' fees, expenses, expert fees and costs incurred in vindicating Named Plaintiff and Class Members' rights;

g.　an award of pre- and post-judgment interest;

h.　service payment for the Named Plaintiff; and

i.　such other and further legal or equitable relief as this Court deems to be just and appropriate.

## JURY DEMAND

Plaintiffs demand a jury to hear and decide all issues of fact in accordance with Federal Rule of Civil Procedure 38(b).

Dated:  May 22, 2020

**LAW OFFICE OF JONATHAN KRONER**

By:　/s/ *Jonathan Kroner*

Jonathan Kroner Law Office
FBN 328677
300 S. Biscayne Blvd., Suite 3710
Miami, Florida 33131
305 310 6046
jk@FloridaFalseClaim.com


**THOMAS & SOLOMON LLP**

J. Nelson Thomas, Esq. (to be admitted *pro hac vice*)
Michael J. Lingle, Esq. (to be admitted *pro hac vice*)
Jessica L. Lukasiewicz, Esq. (to be admitted *pro hac vice*)
Jonathan W. Ferris, Esq. (to be admitted *pro hac vice*)
  *Attorneys for Plaintiffs*
693 East Avenue
Rochester, New York 14607
Telephone:  (585) 272-0540
Facsimile:(585) 272-0574
nthomas@theemploymentattorneys.com
mlingle@theemploymentattorneys.com
jlukasiewicz@theemploymentattorneys.com
jferris@theemploymentattorneys.com